UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE OF CONNECTICUT : | |
| : | November 17, 2011 |
| : | |
| COUNTY OF NEW HAVEN : | FILED UNDER SEAL |

### AFFIDAVIT

I, Daniel J. Lyons, being duly sworn, state as follows:

### Introduction

1.      I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been so employed for approximately 15 years. I am presently assigned to the New Haven, Connecticut office of the FBI.

2.      As a Special Agent of the FBI, I am authorized to investigate violations of the laws of the United States as embodied in Title 18 of the United States Code, and I have received specialized training in the investigation of violations related to white collar crime and mortgage fraud.

3.      I submit this affidavit in support of a criminal complaint and arrest warrant for John Voloshin ("Voloshin") for violations of Title 18, United States Code, Section 1341 (Mail Fraud), Section 1343 (Wire Fraud), and Section 1014 (False Statement on Loan Applications). Based on the facts set forth below in this affidavit, there is probable cause to believe that Voloshin has violated the above-referenced criminal statutes.

4.      The information contained in this affidavit is based on my personal knowledge and involvement in the investigation, information obtained by other agents and/or investigators involved in this matter, as well as other information gathered during the course of this

investigation. This affidavit is submitted for the limited purposes described above. Accordingly, it does not include all of the information gathered in regard to this investigation, but rather contains only that information necessary to establish probable cause for the requested arrest warrant.

### The Scheme Under Investigation

5. Based upon the investigation to date, there is probable cause to believe that John Voloshin has been involved in mortgage fraud, wire fraud, mail fraud, and making false statements on loan applications.

### The Subject

6. John Voloshin is a resident of Connecticut with a primary address of 27 Penny Lane, Woodbridge, Connecticut. He represents himself to be in the business of real estate development.

7. Voloshin owned a second house located at 6 (aka 192) Norcross Drive, Edgartown, Massachusetts ("Martha Vineyard Property"), which was originally purchased in or before 1999 in the name of Voloshin's wife, L.V.

### $500,000 Wire Fraud

8. Investigating agents have spoken to a victim, W.F., who advised that he has known Voloshin since 2003 and has discussed a variety of real estate projects with him.

9. In or around 2006, Voloshin requested that W.F. loan him $500,000. Voloshin told W.F. that he was in contract to purchase a house in Martha's Vineyard, Massachusetts, and there had been a delay in the financing. Voloshin further told W.F. that he needed $500,000 or

he would lose a large down payment. W.F. agreed to loan Voloshin the money.

10. On or about October 3, 2006, Voloshin sent a fax to W.F. in which Voloshin referenced the $500,000 loan, agreed to pay the money back within 30 days, and included wiring instructions for a bank account of Joli LLC, an entity Voloshin controlled, in Connecticut. Voloshin sent this fax from Connecticut to W.F. in New York.

11. On or about October 4, 2006, W.F. sent a fax from New York to Oppenheimer & Co., Inc., in Georgia instructing the recipient to wire transfer $500,000 from W.F.'s account to Voloshin's Joli LLC account. W.F. caused to be wired the $500,000 to Voloshin but Voloshin did not pay back the loan within 30 days, as he indicated to W.F.

12. On or about December 8, 2006, Voloshin sent an email to W.F. in which Voloshin purported to give an update on the repayment of the loan. W.F. made numerous requests for the return of his money. W.F. subsequently filed a civil action against Voloshin and obtained a judgment against him. W.F. has tried unsuccessfully to enforce that judgment.

13. Public records checks have been conducted into property owned or purchased by Voloshin in Martha's Vineyard. These checks have revealed that Voloshin's wife, L.V., purchased a house in Martha's Vineyard in or before 1999. These records checks further revealed that neither Voloshin nor his wife purchased any real property in Martha's Vineyard in 2006.

14. On or about December 29, 2006, Voloshin delivered check number 116 from People's Bank in the amount of $513,333 to W.F. This check was post dated January 31, 2007 and purported to be a repayment of the $500,000 loan plus interest.

15. W.F. attempted to deposit the check but it was returned unpaid by Voloshin's

bank with an indication that the maker had stopped payment on the check.

16. Voloshin has not repaid the $500,000 loan to W.F.

### 2008 Home Equity Mortgage Fraud

17. On or about July 14, 2008, Voloshin completed and signed an application for a home equity loan on his house at 27 Penny Lane, Woodbridge, Connecticut, in the amount of $250,000. He submitted this application to Webster Bank, a federally insured financial institution.

18. As of August 25, 2011, the outstanding balance on the home equity credit line was $252,028.87. The loan is in a past due status and no payments have been made since March 2011.

19. In his 2008 loan application, Voloshin included materially false information, including a document which purported to be his 2007 joint federal income tax return (Form 1040), which showed a total income of $916,759. This return was purportedly completed by Allison and Godfrey, Certified Public Accounts, and signed by David Godfrey.

20. Godfrey has told investigating agents that he did not complete a 2007 tax return for John Voloshin, nor did he complete a 2007 joint return for Voloshin and L.V. Godfrey did complete a 2007 married filed separately tax return for L.V. That return showed a total income of $3,342.

21. Godfrey reviewed a copy of the 2007 joint return that Voloshin submitted to Webster Bank and advised that he (Godfrey) did not complete this return and that the signature on page 2 was not his signature. Godfrey reviewed the records of Allison and Godfrey and determined that no one in his firm completed a 2007 joint return for Voloshin and L.V.

### Tranzon Auction Mail Fraud

22. The investigation has revealed that Voloshin was involved in another fraud concerning a $250,000 fee to participate in an auction.

23. In or about early 2010, Voloshin contacted the victim, G.S., who lives in Wellington, Florida. Voloshin was aware that G.S. was interested in bidding at an upcoming bank auction for the Point Breeze Hotel in Nantucket, Massachusetts. Voloshin asked G.S. if he would be willing to allow Voloshin to act as a co-broker for G.S. in connection with the potential purchase of the Point Breeze Hotel. G.S. agreed to this request.

24. Voloshin then instructed G.S. to write a check in the amount of $250,000 payable to the auction company, Tranzon, and send it to Voloshin at an address in New Haven, Connecticut. Voloshin represented to G.S. that he was working with Tranzon and that bidders were required to pre-register and pay a $250,000 deposit in order to be permitted to bid at the auction.

25. G.S. complied with Voloshin's instructions and, on February 16, 2010, G.S. caused to be sent a check for $250,000 from Florida to Voloshin in Connecticut via Federal Express. Voloshin signed for the package.

26. On February 23, 2010, G.S. attempted to bid on the Point Breeze Hotel via telephone but was told by the Tranzon representative that he could not place a bid because his $250,000 was never received.

27. G.S. confronted Voloshin about this issue and Voloshin agreed to return the $250,000 to G.S.

28. Tranzon Auction Properties of Portland, Maine, has subsequently confirmed that

Voloshin is not affiliated with Tranzon and has never been involved with that company.

29. A review of records from Chase Bank revealed that, on February 17, 2010, Voloshin opened an account in the name of Tranzon LLC. The only authorized signatory on this account is Voloshin. On February 17, 2010, the $250,000 check from G.S. was deposited into the account.

30. Between February 19, 2010, and February 22, 2010, a variety of withdrawals were made from the Tranzon LLC account, including transfers and payments to Voloshin's family members. On February 19, 2010, $100,000 was wired from the Tranzon LLC account to Voloshin's wife, L.V. Also on February 19, 2010, $62,500 was wired to VRC, LLC, an entity controlled by Voloshin. A third wire transfer was sent on the same day in the amount of $12,000 to Voloshin's daughter, M.V. Moreover, over the two days from February 19 to 20, 2010, Voloshin wrote four checks to cash totaling $30,000.

31. As of February 22, 2010, the day before the Point Breeze Hotel auction, the balance of the Tranzon LLC account was $21,304.66.

32. I have reviewed records from the United States Customs Service which document that on February 23, 2010, the day of the hotel auction, John Voloshin was in Jamaica.

33. These records further document that in April, 2010, less than two months after taking the money from G.S., Voloshin and his wife took a 16-day trip to Australia.

34. During the next several months, G.S. and his attorney made several demands for the return on the $250,000 and eventually commenced a law suit against Voloshin.

### Financial Freedom Mortgage Fraud

35. On June 30, 2010, Voloshin submitted a loan application to Financial Freedom Loans, LLC ("Financial Freedom"), a mortgage lending business as defined under 18 U.S.C. § 27, requesting a refinance mortgage in the amount of $520,000. The terms of the loan called for the loan to be secured by the Martha's Vineyard Property as collateral.

36. This loan application was approved and the proceeds of the loan were dispensed via several wire transfers between July 2, 2010, and July 7, 2010. At least five of these wire transfers totaling over $300,000 were sent from a bank in California to banks outside of California.

37. Voloshin included materially false information in the aforementioned loan application in that he listed his liquid assets to be $3,043,000 and attached a statement from UBS Financial Services, Inc. which showed an account balance in excess of $3,000,000.

38. UBS Financial Services, Inc. has confirmed that Voloshin has not held, and does not currently hold, any accounts with UBS.

39. Voloshin included additional materially false information and/or omitted material information in the aforementioned loan application to Financial Freedom. Voloshin listed only the pending $520,000 lien on the loan application and did not disclose three prior liens totaling $1,217,000.

40. Investigation has revealed that, at the time of Voloshin's false loan application, there were three outstanding liens on the property: one in the amount of $307,000 in favor of Martha's Vineyard Savings Bank, one in the amount of $60,000 in favor of the Martha's Vineyard Savings Bank, and one in the amount of $850,000 in favor of Titan Capital, Inc. ("Titan

Capital") (collectively, "prior mortgages").

41. Investigation has further revealed that a discharge of mortgage was recorded in the Dukes County Registry of Deeds for each of these liens. The filing of these discharges gave the impression to all potential lenders that the Martha's Vineyard Property was owned free and clear, and not subject to any liens. In reality, each of these discharges are fraudulent and were not authorized by the lien holder.

42. The Titan Capital mortgage discharge was purportedly signed by I.S. as its representative. Investigating agents have spoken to I.S., who advised that the signature on the discharge is not his and that he never signed any documents discharging Titan Capital's mortgage.

43. The two Martha's Vineyard Savings Bank discharges were purportedly signed by T.L. as the vice president of the bank. Investigating agents have spoken with T.L. and he has advised that the signatures on both discharges are not his. T.L. further stated that the mortgages have not been paid in full.

44. Voloshin did not make payments on the Financial Freedom loan and it went into default. Financial Freedom attempted to bring a foreclosure action and then learned about the existence of the prior mortgages.

45. Further investigation revealed that Voloshin used a portion of the proceeds from the Financial Freedom loan to reimburse G.S. for the money taken in connection with the auction of the Point Breeze Hotel. On July 2, 2010, a wire transfer in the amount of $150,000 was sent from Financial Freedom in California to the law firm of Haile, Shaw and Pfaffenberger in Florida. On July 7, 2010, a wire transfer in the amount of $110,000 was sent to the same entity.

46.     An attorney for G.S. has advised that on July 7, 2010, he received a $257,000 payment from one of Voloshin's attorneys, who is associated with Haile, Shaw and Pfaffenberger. This payment represented the original $250,000 plus $7,000 in interest.

## CONCLUSION

47.     Based on the evidence set forth in this affidavit, I believe probable cause exists that John Voloshin has committed violations of Title 18, United States Code, Sections 1341 (mail fraud), 1343 (wire fraud), and 1014 (false statement on loan application). Accordingly, I respectfully request that the Court issue a warrant for the arrest of John Voloshin.

48.     Because this affidavit and the accompanying documents pertain to an ongoing criminal investigation and because disclosure of the information contained in these documents at this time may compromise the investigation, I request that this affidavit, the criminal complaint, the arrest warrant, the search warrant application, and the search warrant all be ordered sealed, until further order of the Court.

_____
DANIEL J. LYONS
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this
___ day of November 2011 in New
Haven, Connecticut.

_____
Hon. Joan G. Margolis
United States Magistrate Judge